UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

STEVEN MCINNIS,                    )        No. EDCV 08-1587-RC
                                   )
          Plaintiff,               )
                                   )        OPINION AND ORDER
      v.                           )
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of Social Security,   )
                                   )
          Defendant.               )
_____ )

     Plaintiff Steven McInnis filed a complaint on November 24, 2009,
seeking review of the Commissioner's decision denying his application
for disability benefits.  On April 20, 2009, the Commissioner answered
the complaint, and the parties filed a joint stipulation on July 2,
2009.

**BACKGROUND**

     On January 30, 2006, plaintiff, who was born December 12, 1962,
applied for disability benefits under the Supplemental Security Income
program ("SSI") of Title XVI of the Social Security Act ("Act"),
claiming an inability to work since September 14, 1999, due to back,

left shoulder and right thumb pain, an "exploding" ulcer, a hole in
his intestine, and three "fractured toes that will not heal."
Certified Administrative Record ("A.R.") 77-80, 90, 101.  The
plaintiff's application was initially denied on May, 2006, and was
denied again on February 8, 2007, following reconsideration.  A.R. 41-
52.  The plaintiff then requested an administrative hearing, which was
held before Administrative Law Judge Jay E. Levine ("the ALJ") on
January 9, 2008.  A.R. 18-38, 53.  On February 28, 2008, the ALJ
issued a decision finding plaintiff is not disabled.  A.R. 5-17.  The
plaintiff appealed this decision to the Appeals Council, which denied
review on September 15, 2008.  A.R. 1-4.


**DISCUSSION**

**I**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to
review the Commissioner's decision denying plaintiff disability
benefits to determine if his findings are supported by substantial
evidence and whether the Commissioner used the proper legal standards
in reaching his decision.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th
Cir. 2009); Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009).
"In determining whether the Commissioner's findings are supported by
substantial evidence, [this Court] must review the administrative
record as a whole, weighing both the evidence that supports and the
evidence that detracts from the Commissioner's conclusion."  Reddick
v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Holohan v. Massanari,
246 F.3d 1195, 1201 (9th Cir. 2001).  "Where the evidence can
reasonably support either affirming or reversing the decision, [this
Court] may not substitute [its] judgment for that of the

2

1    Commissioner." <u>Parra v. Astrue</u>, 481 F.3d 742, 746 (9th Cir. 2007),

2    <u>cert.</u> <u>denied</u>, 128 S. Ct. 1068 (2008); <u>Vasquez</u>, 572 F.3d at 591.

3

4        The claimant is "disabled" for the purpose of receiving benefits

5    under the Act if he is unable to engage in any substantial gainful

6    activity due to an impairment which has lasted, or is expected to

7    last, for a continuous period of at least twelve months.  42 U.S.C.

8    § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  "The claimant bears the

9    burden of establishing a prima facie case of disability." <u>Roberts v.</u>

10   <u>Shalala</u>, 66 F.3d 179, 182 (9th Cir. 1995), <u>cert.</u> <u>denied</u>, 517 U.S. 1122

11   (1996); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1289 (9th Cir. 1996).

12

13       The Commissioner has promulgated regulations establishing a five-

14   step sequential evaluation process for the ALJ to follow in a

15   disability case.  20 C.F.R. § 416.920.  In the **First Step**, the ALJ

16   must determine whether the claimant is currently engaged in

17   substantial gainful activity.  20 C.F.R. § 416.920(b).  If not, in the

18   **Second Step**, the ALJ must determine whether the claimant has a severe

19   impairment or combination of impairments significantly limiting him

20   from performing basic work activities.  20 C.F.R. § 416.920(c).  If

21   so, in the **Third Step**, the ALJ must determine whether the claimant has

22   an impairment or combination of impairments that meets or equals the

23   requirements of the Listing of Impairments ("Listing"), 20 C.F.R.

24   § 404, Subpart P, App. 1.  20 C.F.R. § 416.920(d).  If not, in the

25   **Fourth Step**, the ALJ must determine whether the claimant has

26   sufficient residual functional capacity despite the impairment or

27   various limitations to perform his past work.  20 C.F.R. § 416.920(f).

28   If not, in **Step Five**, the burden shifts to the Commissioner to show

3

1  the claimant can perform other work that exists in significant numbers

2  in the national economy.  20 C.F.R. § 416.920(g).  Moreover, where

3  there is evidence of a mental impairment that may prevent a claimant

4  from working, the Commissioner has supplemented the five-step

5  sequential evaluation process with additional regulations addressing

6  mental impairments.[1]  Maier v. Comm'r of the Soc. Sec. Admin., 154

7  F.3d 913, 914-15 (9th Cir. 1998) (per curiam).

8

9      Applying the five-step sequential evaluation process, the ALJ

10  found plaintiff has not engaged in substantial gainful activity since

11  his application date.  (Step One).  The ALJ then found plaintiff has

12  the following severe impairments:  "degenerative disc disease of the

13  cervical spine, a learning disorder in language and reading, status

14  post[-]fractured foot and left thumb" (Step Two); however, he does not

15  have an impairment or combination of impairments that meets or equals

16  a Listing.  (Step Three).  The ALJ next determined plaintiff is unable

17  _____

18      [1]  First, the ALJ must determine the presence or absence of
certain medical findings relevant to the ability to work.  20
19  C.F.R. § 416.920a(b)(1).  Second, when the claimant establishes
these medical findings, the ALJ must rate the degree of
20  functional loss resulting from the impairment by considering four
areas of function: (a) activities of daily living; (b) social
21  functioning; (c) concentration, persistence, or pace; and (d)
episodes of decompensation.  20 C.F.R. § 416.920a(c)(2-4).
22  Third, after rating the degree of loss, the ALJ must determine
whether the claimant has a severe mental impairment.  20 C.F.R.
23  § 416.920a(d).  Fourth, when a mental impairment is found to be
severe, the ALJ must determine if it meets or equals a Listing.
24  20 C.F.R. § 416.920a(d)(2).  Finally, if a Listing is not met,
the ALJ must then perform a residual functional capacity
25  assessment, and the ALJ's decision "must incorporate the
pertinent findings and conclusions" regarding plaintiff's mental
26  impairment, including "a specific finding as to the degree of
limitation in each of the functional areas described in
27  [§ 416.920a(c)(3)]."  20 C.F.R. § 416.920a(d)(3), (e)(2).

28

1  to perform his past relevant work as a combat signaler in the military
2  or a warehouse worker.  (Step Four).  Finally, the ALJ determined
3  plaintiff can perform a significant number of jobs in the national
4  economy; therefore, he is not disabled.  (Step Five).

5

6                                    II
7        A claimant's residual functional capacity ("RFC") is what he can
8  still do despite his physical, mental, nonexertional, and other
9  limitations.  Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001);
10 see also Valentine v. Comm'r, Soc. Sec. Admin., 574 F.3d 685, 689 (9th
11 Cir. 2009) (RFC is "a summary of what the claimant is capable of doing
12 (for example, how much weight he can lift).").  Here, the ALJ found
13 plaintiff has the RFC:

14

15       to perform sedentary work[2] . . . except he cannot work at
16       unprotected heights or around dangerous machinery.  He
17       cannot work on uneven ground or with vibrating tools/
18       equipment.  He can occasionally climb, balance, stoop,
19       kneel, crouch and crawl.  He cannot do forceful gripping or
20       grasping and can occasionally lift above shoulder level.
21       Mentally, the [plaintiff] can perform entry level work.
22 //

23

24       [2]  "Sedentary work involves lifting no more than 10 pounds
25 at a time and occasionally lifting or carrying articles like
   docket files, ledgers, and small tools.  Although a sedentary job
26 is defined as one which involves sitting, a certain amount of
   walking and standing is often necessary in carrying out job
27 duties.  Jobs are sedentary if walking and standing are required
   occasionally and other sedentary criteria are met."  20 C.F.R.
28 § 416.967(a).

                                    5

A.R. 11 (footnote added).  However, plaintiff contends the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly consider the opinions of examining psychologist David C. Anderson, Ph.D., nonexamining physician Ann Dew, D.O., and treating physical therapist Jennifer Spurgeon, MFT.[3]

### A.   Dr. Anderson:

"[T]he ALJ may only reject . . . [an] examining physician's uncontradicted medical opinion based on 'clear and convincing reasons[,]'" Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006), and "[e]ven if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record."  Regennitter v. Comm'r of the Soc. Sec. Admin., 166 F.3d 1294, 1298-99 (9th Cir. 1999); Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

In August of 2006, plaintiff underwent psychological testing at Loma Linda Veteran's Administration Medical Center, where, based on

---

[3]  Although plaintiff's attorney categorizes Drs. Anderson and Dew as treating physicians, see Jt. Stip. at 4:1-22, 11:13-27, that is not so.  Rather, the medical records demonstrate Dr. Anderson saw plaintiff one time regarding a possible learning disability, A.R. 325, and Dr. Dew simply reviewed plaintiff's chart and offered an opinion, see A.R. 361 (Plaintiff "is not here for physical examination, just chart review."); thus, Dr. Anderson is an examining physician and Dr. Dew is a nonexamining physician.  In any event, even if Drs. Anderson and Dew are considered to be treating physicians, the results would be the same.

"assessment results indicating that [plaintiff's] Verbal Comprehension Index [("VCI")] is in the Borderline range (5th percentile)[,] . . . [his] reading comprehension is in the 3rd percentile, [and] his spelling is in the 1st percentile[,]" Dr. Anderson concluded that plaintiff likely has a language-based learning disability.  A.R. 324-30.  Dr. Anderson explained that plaintiff's VCI score shows he has poor verbal comprehension when compared to his peers.  A.R. 327. Further testing revealed:  plaintiff's full scale IQ is 84, which is in the below-average range;[4] plaintiff has appropriate non-verbal reasoning ability when compared to his peers; and plaintiff's ability to hold and process information in short-term memory is in the average range.  A.R. 327-28.  With regard to the tests, Dr. Anderson explained:

    In making comparisons between [plaintiff's] cognitive
    abilities, his perceptual organization was significantly
    higher than his verbal comprehension.[5]  This indicates

_____

    [4]  Dr. Anderson found that the full scale IQ score "is not a valid measure of [plaintiff's] past and current intellectual functioning."  A.R. 329.

    [5]  Upon testing plaintiff's basic academic skills, Dr. Anderson found:

    On a task that required the [plaintiff] to read a
    series of single words, [plaintiff's] performance was
    in the Low range for his age group (5th percentile),
    with a grade equivalency in 5th grade.  This indicates
    that his ability to read is low when compared to his
    peers, and is comparable to a student in the 5th grade.
    His performance in Sentence Comprehension was also in
    the low range for his age group (3rd percentile), with
    a grade equivalency at the 6th grade level.  This
    indicates that the [plaintiff's] understanding of what

1      that [plaintiff] is much better at processing visually

2      perceived material than he is with verbal information.

3      Furthermore, [plaintiff's] working memory was better than

4      his visual comprehension.  This indicates that even though

5      his mental processing ability is intact, he has difficulty

6      processing verbal information and thinking with words.

7

8  A.R. 328 (footnote added).  Dr. Anderson recommended plaintiff would

9  benefit from remedial reading courses.  A.R. 329.

10

11     Plaintiff complains that the ALJ did not specifically address his

12  poor spelling when determining in Step Five that he can perform other

13  work in the national economy.  The Court disagrees.  An ALJ need not

14  set forth verbatim every statement a physician makes; rather, he need

15  only discuss evidence that is significant and probative of a

16  claimant's disability claim.  <u>Howard v. Barnhart</u>, 341 F.3d 1006, 1012

17  (9th Cir. 2003).  Here, the ALJ accepted Dr. Anderson's opinions, and,

18  based on those opinions, found plaintiff has a severe learning

19  disorder in language and reading; however, plaintiff can perform entry

20  level work.  A.R. 10-11, 14-15.  In making these findings, the ALJ

21

22      he has read is low when compared to his peers, and is

23      comparable to a student in the 6th grade.  [¶]  . . .

       [¶]  Finally, on a task that required him to spell

24      verbally presented words, [plaintiff's] spelling was in

       the Lower Extreme range for his age (1st percentile),

25      with a grade equivalency at the 3rd grade level.  This

26      indicates that his ability to spell is exceptionally

       low when compared to his peers, and is comparable to a

27      student in the 3rd grade.

28  A.R. 328.

specifically noted plaintiff "was significantly below the percentile
in reading, spelling and verbal comprehension." A.R. 14.  However,
the ALJ also found that plaintiff's "'severe' learning disorder . . .
would not preclude the performance of entry level work" since the
medical records "consistently showed no learning barriers, that the
[plaintiff] was able to verbalize or demonstrate understanding of
post-operative care and instructions," and plaintiff had good under-
standing of the use and safety of medical equipment, medication and
medical procedures.  A.R. 14-15; see also A.R. 172, 185-87, 189, 195,
213-14, 349-50.  Thus, the ALJ properly assessed plaintiff's learning
disability, and his findings are supported by substantial evidence in
the record.  See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir.
2005) (Substantial evidence supports ALJ's determination that claimant
has difficulty paying attention, concentrating, and organizing herself
without getting overwhelmed where ALJ agreed with physician's
assessment but concluded it would not affect claimant's ability to
work since, despite these limitations, claimant was able to complete
high school, obtain a college degree, finish a certified nurses' aide
training program, and participate in military training).


   **B.   Dr. Dew:**

   On November 20, 2006, Dr. Dew reviewed plaintiff's chart and
diagnosed him as having an unspecified finger injury, osteoarthritis,
low back pain, and a basic learning disability.  A.R. 360-62.  Dr. Dew
opined:


   It is unlikely that [plaintiff] will be able to return to
   general labor positions, his learning disability might be

1    remediated with proper instruction . . . so that he could do

2    sedentary work[;] however, his dependence on pain medication

3    for musculoskeletal complaints might interfere with his

4    ability to concentrate.

5

6  A.R. 362.  The plaintiff contends the ALJ erred in rejecting Dr. Dew's

7  opinion that plaintiff's pain medication might interfere with his

8  ability to concentrate.[6]  Jt. Stip. at 10:18-12:16, 13:15-21.

9

10     The ALJ "may reject the opinion of a nonexamining physician by

11  reference to specific evidence in the medical record."  Sousa v.

12  Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998).  Here, the ALJ

13  disregarded Dr. Dew's opinion that plaintiff's "dependence on pain

14  medication for musculoskeletal complaints might interfere with his

15  ability to concentrate because the record specifically states his

16  medications caused no excessive sleepiness or drowsiness."  A.R. 15

17  (citations omitted).  This is a specific and legitimate reason for

18  rejecting Dr. Dew's speculation, and the ALJ's rationale is supported

19  by substantial evidence in the record.  See, e.g., A.R. 359; Batson v.

20  Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004);

21  Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir.

22  1999).

23  //

24  //

25  ─────────────────

26      [6]  To the extent plaintiff contends the ALJ erred in failing
    to consider side effects from his medication, plaintiff's claim
27  is specious since he has not identified any side effects he
    experienced.  See Jt. Stip. at 10:18-12:16, 13:15-21; Greger v.
28  Barnhart, 464 F.3d 968, 973 (9th Cir. 2006).

**C.  Physical Therapist:**

A physical therapist is not an acceptable medical source, 20 C.F.R. § 416.913(a); nevertheless, an ALJ should consider such evidence, at a minimum, as lay testimony which is qualified evidence. 20 C.F.R. § 416.913(d)(1); <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1231-32 (9th Cir. 1987).

Physical therapist Jennifer Spurgeon, MPT, examined plaintiff on November 22, 2006, and noted, among other things, that plaintiff had an antalgic gait[7] and was moderately independent without an assistive device and with a cane.[8]  A.R. 357.  Ms. Spurgeon started plaintiff on a course of physical therapy, A.R. 356-58, and plaintiff subsequently attended four physical therapy sessions with Ms. Spurgeon.  A.R. 443-45.  When he was discharged from physical therapy on January 25, 2007, Ms. Spurgeon opined that plaintiff's goals were partially achieved and he "demonstrated no significant antalgia or mobility limitations. . . ."  A.R. 444.  Nevertheless, plaintiff contends the ALJ did not properly address Ms. Spurgeon's initial comments about his gait and use of a cane.  Again, the Court disagrees.

Here, the ALJ specifically noted that plaintiff has, at times, been found to have an antalgic gait.  A.R. 12.  The ALJ also noted

---

[7]  An antalgic gait is "a limp adopted so as to avoid pain on weight-bearing structures (as in hip injuries), characterized by a very short stance phase."  <u>Dorland's Illustrated Medical Dictionary</u>, 721 (29th ed. 2000).

[8]  Plaintiff mischaracterizes Ms. Spurgeon's notation as indicating plaintiff "requires the use of a cane."  Jt. Stip. at 13:25-27.

that plaintiff has been prescribed a cane, id.; see also A.R. 192, but opined "its need seems questionable in light of no significant antalgia or mobility limitations. . . ." A.R. 12.  Significantly, in reaching this conclusion, the ALJ cited Ms. Spurgeon's opinion that upon discharge from physical therapy plaintiff "demonstrated no significant antalgia or mobility limitations." A.R. 444.  Thus, it is clear that the ALJ properly considered the treating physical therapist's opinions.

Moreover, the ALJ also found other evidence supports the finding plaintiff does not need a cane, noting:

> [Plaintiff] . . . [is] . . . weight bearing, . . . ambulate[s] without difficulty and . . . ha[s] a steady gait.  [His s]trength has been intact, sensation intact, and deep tendon reflexes intact.  At the orthopedic consultative examination of April 2006, [plaintiff's] gait was normal and no assistive devices were used to ambulate.  Examination of the [plaintiff's] feet revealed enlargement deformity of the right great toe.  There was no evidence of swelling or tenderness.  There was 50 percent restriction in range [of] motion of the right toe with no neurological deficits.

A.R. 12 (citations omitted).  The ALJ then concluded that a cane "is not medically necessary when [plaintiff is] sitting and performing sedentary work." Id.  The ALJ has provided specific and legitimate reasons for finding plaintiff does not need a cane to ambulate, and these findings are supported by substantial evidence in the record.

1  A.R. 120-21, 178, 357, 367, 412, 444; <u>Batson</u>, 359 F.3d at 1195;
2  <u>Morgan</u>, 169 F.3d at 602.

3

4                                 **III**

5       At Step Five, the burden shifts to the Commissioner to show the
6  claimant can perform other jobs that exist in the national economy.
7  <u>Bray v. Astrue</u>, 554 F.3d 1219, 1222 (9th Cir. 2009); <u>Hoopai v. Astrue</u>,
8  499 F.3d 1071, 1074-75 (9th Cir. 2007).  To meet this burden, the
9  Commissioner "must 'identify specific jobs existing in substantial
10 numbers in the national economy that [the] claimant can perform
11 despite her identified limitations.'"  <u>Meanel v. Apfel</u>, 172 F.3d 1111,
12 1114 (9th Cir. 1999) (quoting <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1432
13 (9th Cir. 1995)).  There are two ways for the Commissioner to meet
14 this burden: "(1) by the testimony of a vocational expert, or (2) by
15 reference to the Medical Vocational Guidelines ["Grids"] at 20 C.F.R.
16 pt. 404, subpt. P, app. 2."[9]  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1099
17 (9th Cir. 1999); <u>Bray</u>, 554 F.3d at 1223 n.4.  However, "[w]hen [the]
18 Grids] do not adequately take into account [a] claimant's abilities
19 and limitations, the Grids are to be used only as a framework, and a
20 vocational expert must be consulted."  <u>Thomas v. Barnhart</u>, 278 F.3d

21

22       [9]  The Grids are guidelines setting forth "the types and
23 number of jobs that exist in the national economy for different
   kinds of claimants.  Each rule defines a vocational profile and
24 determines whether sufficient work exists in the national
   economy.  These rules represent the [Commissioner's]
25 determination, arrived at by taking administrative notice of
26 relevant information, that a given number of unskilled jobs exist
   in the national economy that can be performed by persons with
27 each level of residual functional capacity."  <u>Chavez v. Dep't of</u>
   <u>Health & Human Servs.</u>, 103 F.3d 849, 851 (9th Cir. 1996)
28 (citations omitted).

947, 960 (9th Cir. 2002); <u>Bray</u>, 554 F.3d at 1223 n.4.

Hypothetical questions posed to a vocational expert must consider all of the claimant's limitations, <u>Valentine</u>, 574 F.3d at 690; <u>Thomas</u>, 278 F.3d at 956, and "[t]he ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record." <u>Tackett</u>, 180 F.3d at 1101. "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the 'expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'" <u>Matthews v. Shalala</u>, 10 F.3d 678, 681 (9th Cir. 1995) (quoting <u>Delorme v. Sullivan</u>, 924 F.2d 841, 850 (9th Cir. 1991)); <u>Lewis v. Apfel</u>, 236 F.3d 503, 517 (9th Cir. 2001).

Here, the ALJ asked vocational expert Sandra Fioretti the following hypothetical question:

> Assume a hypothetical individual [plaintiff's] age,
> education, prior work experience.  Assume this person is
> restricted to a sedentary range of work.  No work on
> dangerous machinery.  No work [at] unprotected heights.  No
> uneven ground.  No vibration.  No balancing.  Occasional
> climbing, stooping, kneeling, crouching, crawling.  No
> forceful gripping or grasping.  Occasional lifting above
> shoulder level.  And let's say entry level work.  Is there
> work in the regional or national economy such a person could
> perform?

//

A.R. 35.  The vocational expert responded that such a person could

perform work as an assembler in buttons and notions (Dictionary of

Occupational Titles ("DOT")[10] no. 734.687-018, a sorter of small

agricultural products such as nuts (DOT no. 521.687-086), and a charge

account clerk (DOT no. 205.367-014).  A.R. 36.  Based on this

testimony, the ALJ concluded plaintiff can perform a significant

number of jobs in the national economy.  A.R. 16.  However, plaintiff

contends the ALJ's hypothetical question to the vocational expert was

incomplete because the ALJ did not include plaintiff's need for a cane

to ambulate.  Jt. Stip. at 17:1-18:7, 19:4-8.  For the reasons

discussed above, the ALJ did not need to include this alleged

limitation in his hypothetical question to the vocational expert.

Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Magallanes v.

Bowen, 881 F.2d 747, 756-57 (9th Cir. 1989).


     Further, plaintiff contends the ALJ's Step Five determination is

not supported by substantial evidence because "it is very clear that

the Plaintiff is unable to perform the[] jobs" the vocational expert

identified given "writing demands that exceed the Plaintiff's

limitations."  Jt. Stip. at 7:5-8:14, 10:5-13.  There also is no merit

to this claim.


     The jobs of assembler and sorter of agricultural products have

//

//

_____

     [10]  The DOT is the Commissioner's primary source of reliable
vocational information.  Johnson, 60 F.3d at 1434 n.6; Terry v.
Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990).

language development levels of 1[11] -- the lowest level -- which
requires the individual to "[p]rint simple sentences containing
subject, verb, and object, and series of numbers, names and
addresses." Dictionary of Occupational Titles at 351, 757, 1010-11.
Here, plaintiff completed high school, A.R. 21, 94, and his past
relevant work as a materials handler had a language development level
of 1.  A.R. 23, 34-35; Dictionary of Occupational Titles at 949-50.
There is nothing in the record showing plaintiff is unable to perform
simple written tasks despite his learning disability and spelling at a
third-grade level.[12]  A.R. 328-29.  To the contrary, the California
content standards for third grade level written and oral language, see
California Parents for Equalization of Educ. Materials v. Noonan, 600
F. Supp. 2d 1088, 1097 (E.D. Cal. 2009) ("The Content Standards
describe what students should know and be able to do by the end of
each grade level."), suggest that, among other skills, a third grade
student should be able to "[s]pell correctly one-syllable words that
have blends, contractions, compounds, orthographic patterns (e.g., qu,

---

[11]   Among other features, the DOT sets forth guidelines
regarding the General Education Development ("GED") required to
perform various occupations.  The GED guidelines are subdivided
into three categories – reasoning development, mathematical
development, and language development – that are rated on a scale
from 1 (lowest) to 6 (highest).  U.S. Dep't of Labor, Dictionary
of Occupational Titles, 1010-11 (4th ed. 1991).

[12]   On the other hand, the job of charge account clerk has a
language development level of 3, which requires the ability to
"[w]rite reports and essays with proper format, punctuation,
spelling, and grammar, using all parts of speech." Dictionary of
Occupational Titles at 174-75, 1011.  This job would appear to be
beyond the limitations of plaintiff's learning disability.
Nevertheless, any error in this regard is harmless given the
other jobs plaintiff can perform.  Tommasetti v. Astrue, 533 F.3d
1035, 1038 (9th Cir. 2008).

consonant doubling, changing the ending of a work from -y to -ies when forming the plural, and common homophones (e.g., hair-hare)," arrange words in alphabetical order, create a single paragraph, "[r]evise drafts to improve the coherence and logical progression of ideas by using an established rubric[,]" write narratives, "descriptions that use concrete sensory details to present and support unified impressions of people, places, things, or experiences[,]" and personal and formal letters, thank-you notes, and invitations, and "[u]nderstand and be able to use complete and correct declarative, interrogative, imperative, and exclamatory sentences in writing and speaking." <u>See</u> California State Board of Education, Content Standards, English Language Arts at pp. 18-19. (http://www.cde.ca. gov/be/st/ss/documents/elacontentstnds.pdf (last visited February 11, 2010)). Thus, an ability to spell (or write) at the third grade level is not inconsistent with an ability to perform jobs requiring a language development level of 1, and the vocational expert's testimony provides substantial evidence to support the ALJ's Step Five determination.

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is denied; and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.

DATE:  February 16, 2010                    /S/ ROSALYN M. CHAPMAN____
                                                ROSALYN M. CHAPMAN
                                            UNITED STATES MAGISTRATE JUDGE

R&R-MDO\08-1587.mdo
2/16/10